UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COMMUNITY FOUNDATION MEDICAL GROUP,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COMMUNITY HEALTH PARTNERS, et al.,<br><br>　　　　Defendants. | Case No.  1:23-cv-01452-JLT-HBK (PC)<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND[1]<br><br>(Doc. No. 15) |

　　　Pending before the Court is Plaintiff's Motion to Remand. (Doc. No. 15, "Motion"). Defendants Community Health Partners ("CHP") and Fresno Community Hospital and Medical Center d/b/a Community Health Systems ("CHS") (collectively "Defendants") filed an Opposition (Doc. No. 18), and Plaintiff filed a Reply (Doc. No. 20). For the reasons set forth below, the Court denies the Motion.

**BACKGROUND**

　　　Plaintiff Community Foundation Medical Group ("Plaintiff" or "CFMG") initiated this

---

[1] A motion to remand is a dispositive motion. *See Flam v. Flam*, 788 F.3d 1043, 1047 (9th Cir. 2015). Under 28 U.S.C. § 636(c)(1), all parties named in a civil action must consent to a magistrate judge's jurisdiction before that jurisdiction vests for "dispositive decisions." *Williams v. King*, 875 F.3d 500, 504 (9th Cir. 2017). On December 4, 2023 the district court reassigned the instant Motion to the undersigned for direct disposition based on the Parties' stipulation to consent to magistrate jurisdiction for the instant Motion only. (*See* Doc. Nos. 21, 22).

1   action by filing a complaint in the Fresno County Superior Court ("FCSC") on October 31, 2022.
2   (Doc. No. 1-2). Plaintiff's Complaint alleged claims for "interference with contract" and "unfair
3   business practices" against CHS, a not-for-profit health system operating in the San Joaquin
4   Valley; and CHP, CHS's affiliated non-profit medical foundation that operates various medical
5   clinics. (*Id*. at 6). The Complaint alleged that, during the COVID-19 pandemic, certain medical
6   specialty groups that contracted to provide professional medical services to CFMG's patients
7   entered into arrangements to provide professional medical services to CHP's patients. (*Id*.).

8       On December 20, 2022, Defendants filed and served their demurrer to CFMG's
9   Complaint. (Doc. No. 1-3). CFMG did not oppose Defendants' demurrer, and instead filed a
10  First Amended Complaint ("FAC") on April 24, 2023. (Doc. No. 1-4). Plaintiff's FAC replaced
11  the interference with contract claim with a tortious inducement of breach of contracts claim, and
12  further alleged that its unfair business practices claim was based on conduct "constitut[ing]
13  unlawful inurement" because Defendants engaged in the alleged conduct "so that Defendants
14  could have specialty physicians under contract and available for mentoring students at the
15  [California Health Sciences University College of Osteopathic Medicine], a for-profit enterprise."
16  (Doc. No. 1-4 ¶ 15).

17      On May 26, 2023, Defendants demurred to each cause of action asserted in the FAC.
18  (Doc. No. 1-5). In their demurrer to the FAC, Defendants noted that CFMG's unfair business
19  practices claim was "uncertain" because it did not "identify what governing provisions or
20  authorities Defendants allegedly violated that would render the alleged conduct 'unlawful
21  inurement.'" (*Id*. at 17). In its opposition to Defendants' demurrer filed on August 9, 2023,
22  CFMG argued that it had "adequately plead[ed] a civil conspiracy involving the Defendants
23  which had, as one of its intended purposes, the financial benefit of the neighboring
24  [California Health Sciences University College of Osteopathic Medicine], a for-profit enterprise
25  . . ." (*Id*. at 31). In support of this position, CFMG cited, *inter alia*, Internal Revenue Code §
26  501(c)(3) and Internal Revenue Code regulation 1.501(c)(3)-1(c)(2). (*Id*. at 30-31).

27      On August 30, 2023, the state court issued its final order sustaining Defendants'
28  demurrer as to CFMG's unfair business practices claim because it lacked "specifics" as to the

underlying predicate violations. (Doc. No. 1-6 at 8). In its order, the Court stated:

> [T]he court finds that [CFMG] has not adequately pled the second cause of action, and it sustains the demurrers thereto. However, the court grants leave to amend, as it is possible that plaintiff may be able to add new allegations to cure the defect in the cause of action, as argued in plaintiff's opposing papers. The court will require plaintiff to amend the complaint to clearly state its claim for unfair business practices.

(*Id*. at 9). The Court specifically noted Plaintiff's reference, in its Opposition to the demurrer, to Internal Revenue Code Section 501(c)(3) and Internal Revenue Code, Regulation Number 1.501(c)(3)-1(c)(2), and stated, "[h]ad these specifics been included in the FAC, Plaintiff may have sufficiently pled a claim for an unfair business practice . . ." (*Id*. at 8).

On September 8, 2023, CFMG filed a second amended complaint ("SAC"), adding the following allegations:

> Because Defendants are non-profit entities, they committed an unlawful inurement to benefit a related private entity, the [California Health Sciences University College of Osteopathic Medicine], in violation of Internal Revenue Code Section 501(c)(3) and Internal Revenue Code Regulation 1.501(c)(3)-1(c)(2). Both sections prohibit a non-profit entity from using its net income, either in whole or in part, to inure to the benefit of any private shareholder or individual.

(Doc. No. 1-7 at 5).

On October 6, 2023, twenty-eight (28) days after Plaintiff filed the SAC, Defendants removed this case asserting this court's original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's SAC alleges that CFMG's unfair business practices claim is exclusively based on violations of federal tax laws and regulations, specifically 26 U.S.C. § 501(c)(3) and 26 C.F.R.§ 1.501(c)(3)-1(c)(2). (Doc. No. 1). On October 12, 2023, Defendants timely filed their Answer to the SAC. (Doc. No. 8). On October 31, 2023, Plaintiff filed the instant Motion seeking remand. (Doc. No. 15).

**APPLICABLE LAW AND ANALYSIS**

A. <u>Legal Standard</u>

When a civil action over which the federal courts have original jurisdiction is brought in state court, the defendant may remove that action to federal district court. *See* 28 U.S.C. §

3

1441(a).  Subject matter jurisdiction may be based on either diversity jurisdiction or federal question jurisdiction.  28 U.S.C. §§ 1331, 1332.  Federal-question jurisdiction is governed by the "well-pleaded complaint rule" (or "Mottley rule") which provides "that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) ("[A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution.").

A motion to remand is the proper procedure for a plaintiff to challenge removal.  28 U.S.C. § 1447.  The party who seeks removal carries the burden of establishing by a preponderance of the evidence that removal is proper.  *Moore-Thomas v. Ala. Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009).  "This burden is particularly stringent for removing defendants because '[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand.'"  *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773-74 (9th Cir. 2017) (quoting *Moore-Thomas*, 553 F.3d at 1244).

Where the basis for removal is clear from the complaint or other initial pleading, 28 U.S.C. 1446(b) sets a thirty-day deadline to remove a case to federal court from the date a defendant receives the initial pleading.  *Dietrich v. Boeing Company*, 14 F.4th 1089, 1090 (9th Cir. 2021).  This is the "first pathway to removal."  But "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order *or other paper* from which it may first be ascertained that the case is one which is or has become removable."  *Id*. § 1446(b)(3) (emphasis added).  This is the second pathway to removal.

California Business & Professions Code § 17200 ("Unfair Competition Law" or "UCL") is a state law that prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "An unlawful business practice under [the UCL] is an act or practice, committed pursuant to business activity, that is at the same time forbidden by law."  *Progressive W. Ins. Co. v. Yolo Cty. Sup. Ct.*, 135 Cal. App. 4th 263, 287 (3d Dist. 2005) (citation

1  omitted). The UCL thus "borrows violations of other laws and treats them as unlawful practices

2  that the [UCL] makes independently actionable." *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel.*

3  *Co.*, 20 Cal. 4th 163, 180 (1999) (citations omitted). "Virtually any law—federal, state or local—

4  can serve as a predicate for an action under" the UCL. *Ticconi v. Blue Shield of Cal. Life &*

5  *Health Ins. Co.*, 160 Cal. App. 4th 528, 539 (2d Dist. 2008).

6      B.  <u>Parties' Positions</u>

7      Here, Plaintiff contends that Defendants' Notice of Removal was not timely filed because

8  Plaintiff's First Amended Complaint ("FAC"), filed on April 24, 2023, alleged as its second cause

9  of action an unlawful business practices claim under the UCL based on "unlawful inurement" by

10  Defendants. (Doc. No. 15 at 2). Plaintiff asserts that "unlawful inurement" "can *only* be a federal

11  violation." (*Id.*) (emphasis in original). Further, Plaintiff argues, the federal basis of its suit was

12  clear in its August 9, 2023 opposition to Defendants' demurrer to the FAC, which "clarified" that

13  Internal Revenue Code 501(c)(3) and Internal Revenue Code regulation 1.501(c)(3)-1(c)(2)

14  formed the basis of Plaintiff's UCL claim. (*Id.*). Thus, the removal clock was triggered by

15  Plaintiff filing of the FAC on April 24, 2023, or at the latest by its opposition to Defendants'

16  demurrer on August 9, 2023, making Defendants' October 6, 2023 Notice of Removal untimely.

17  (*Id.*).

18      Defendants dispute either of these triggering events, instead arguing that the basis for

19  removal was not "unequivocally clear and certain" until Plaintiff filed its SAC on September 8,

20  2023. (Doc. No. 18 at 5). They assert that the FAC's reference to "unlawful inurement" "was not

21  sufficient to demonstrate that the FAC presented a federal question, or otherwise put Defendants

22  on notice that CFMG's UCL claim was exclusively based on alleged violations of federal law."

23  (*Id.* at 11). In support, they point to the state court order sustaining Defendants' demurrer to the

24  FAC, which found that the basis of Plaintiff's UCL cause of action was not clear. (*Id.* at 7). Nor,

25  Defendants argue, was it "unequivocally clear and certain" from Plaintiff's opposition to the

26  Defendants' demurrer to the FAC that they would elect to pursue a UCL claim exclusively based

27  on federal authorities, or that Plaintiff would reassert the UCL cause of action at all after the state

28  court order disposed of it. (*Id.* at 10). Thus, Defendants argue, a Notice of Removal would have

been premature prior to Plaintiff's filing of the Second Amended Complaint on September 8, 2023. (*Id*.).

In Reply, Plaintiff asserts that the reference in the FAC to "unlawful inurement" was unequivocally clear and certain because there is no state law cause of action for unlawful inurement, and thus the filing of the FAC triggered the removal clock on April 24, 2023. (Doc. No. 20 at 2). At the latest, Plaintiff contends that its Opposition to Defendants' demurrer to the FAC triggered the removal clock on August 9, 2023. (*Id*.). Plaintiff disputes Defendants' characterization of the state court order sustaining the demurrer to Plaintiff's FAC, stating that the court's order "was not an adjudication . . . that there was uncertainty concerning Plaintiff's assertion of a federal question." (*Id*. at 3). Rather, the state court "determined that the penumbra of supporting factual allegations . . . identified in Plaintiff's opposition . . . could be added to Plaintiff's pleading to alleviate uncertainty relating to background allegations supporting Plaintiff's [UCL] claim." (*Id*.). Thus, whether the Court determines the removal clock started on April 24, 2023 or August 9, 2023, Plaintiff reasserts that Defendants' October 6, 2023 Notice of Removal was untimely.

C. <u>Discussion</u>

The parties agree that *Dietrich v. Boeing Co*., 14 F.4th 1089 (9th Cir. 2021) should guide the Court's timeliness analysis but dispute its application to the facts at issue. (*See* Doc. No. 18 at 5; Doc. No. 20 at 2). In *Dietrich*, the Ninth Circuit clarified that the "removal clock does not start until a paper makes a ground for removal 'unequivocally clear and certain.'" 14 F. 4th at 1094 (adopting "unequivocally clear and certain" standard). The plaintiff in *Dietrich,* diagnosed with mesothelioma, sued several defendants in connection with her husband's asbestos exposure but did not initially allege her husband's exposure was through his Boeing's work for the military, which "would have alerted Boeing to a possible basis for removal to federal court under the federal officer removal statute." *Id*. All the available information was "ambiguous or misleading as to whether [the plaintiff's] claims against Boeing were related to her husband's service in the military." *Id*. at 1095. Boeing was therefore not on notice that the case was removable until the plaintiff filed amended discovery responses stating for the first time that she was exposed to

1   asbestos through her husband's exposure to Boeing aircraft while in the Marines. *Id*. at 1092.
2   The Ninth Circuit, after adopting the "unequivocally clear and certain" standard, concluded that it
3   only became unequivocally clear and certain that the case was removable when Boeing received
4   plaintiff's amended discovery responses. *Id*. at 1095. It explained that such a standard would
5   "'avoid[ ] gamesmanship in pleading,' preventing plaintiffs from strategically starting the
6   removal clock without the defendants' realization, while still allowing plaintiffs to start the clock
7   and prevent strategic delays simply by making the basis for removal unequivocally clear and
8   certain." *Id*.

    1. <u>FAC Did Not Make Grounds for Removal Unequivocally Clear and Certain</u>

10  Plaintiff first argues that the reference to "unlawful inurement" in the FAC provided an
11  "unequivocally clear and certain" basis for removal because no cause of action for unlawful
12  inurement exists under California state law. However, "notice of removability under 1446(b) is
13  determined through examination of the four corners of the applicable pleadings, not through
14  subjective knowledge or a duty to make further inquiry." *Harris*, 425 F.3d at 694; *see also*
15  *Alvarez v. Yosemite Nat'l Park*, 2022 WL 17959886, at *2 (E.D. Cal. Dec. 27, 2022) (citing
16  *Dietrich* and holding that a pleading did not make removability based on diversity sufficiently
17  clear when the complaint was silent as to the domicile of the parties and lacked a specific amount
18  in controversy).

19  It is uncontested that the UCL cause of action in the FAC does not make any explicit
20  reference to federal law. Instead, Plaintiff suggests it is common knowledge that unlawful
21  inurement is *exclusively* a federal violation and therefore the grounds for removal were apparent
22  by the mere usage of this phrase. (Doc. No. 15 at 2). Plaintiff cites no authority for this broad
23  assertion. The Court, however, has located several unpublished California cases discussing anti-
24  inurement provisions in contracts, *see, e.g. Plambeck v. Castaic Lake Water Agency*, 2007 WL
25  2564537, at *10 (Cal. Ct. App. Sept. 6, 2007), *Marinos v. City of Rocklin*, 2009 WL 3634338, at
26  *5 (Cal. Ct. App. Nov. 4, 2009), and in the context of the California Attorney General's authority
27  to regulate the sale or transfer of a non-profit health care facility's assets, *see Klein v. Anaheim
28  Mem'l Hosp. Ass'n*, 2009 WL 3233914, at *1 (Cal. Ct. App. Oct. 8, 2009). Thus, the Court finds

Plaintiff's blanket claim that unlawful inurement "can *only* be a federal violation" to be unsupported by a review of state case law.

Moreover, to the extent Plaintiff relied on Defendants' subjective knowledge that "unlawful inurement" could only be a federal cause of action (which, as noted above, the Court finds to be dubious) or implied that Defendants could have discovered that fact through further inquiry, this runs counter to the "bright line" principles adopted by the Ninth Circuit in *Dietrich* and *Harris*.[2] Because the four corners of Plaintiff's FAC did not clearly and unequivocally establish a ground for removal without further inquiry by Defendants, it did not trigger the removal clock under Section 1446(b). *See Harris*, 425 F.3d at 696 (noting that a "clue" that a claim might be removable on diversity grounds did not trigger the removal clock where it would require further inquiry by the defendant).

2. Plaintiff's Opposition to Defendant's Demurrer Did Not Trigger Removal Clock

Plaintiff's secondary argument is that its Opposition to Defendants' demurrer to the FAC put Defendants on notice as to the federal basis for their UCL claims because it specifically cited federal tax law and a federal regulation. (Doc. No. 15 at 2). Plaintiff cites *Villanueva v. Rabobank, N.A.*, 2023 WL 4051996 (N.D. Cal. June 16, 2023) in support of this argument.

*Villaneuva* involves a putative class action complaint filed on June 12, 2018, asserting two causes of action: (i) breach of contract and (ii) violation of the UCL due to allegedly deceptive and unlawful collections of overdraft fees. *Id.* at *1. After pending for almost four years, the plaintiff filed a first amended complaint on April 15, 2022, alleging a new theory of UCL liability explicitly based on violations of 12 C.F.R. § 1005.17 ("Regulation E"), a federal regulation that requires customers to affirmatively consent to optional overdraft fee programs. *Id.* On December

---

[2] Moreover, the Court notes that a broad search of all federal and state case law located only two cases using the phrase "unlawful inurement," neither involving the federal tax law and regulation cited by Plaintiff. *See Flanigan v. Gen. Elec. Co.*, 242 F.3d 78 (2d Cir. 2001) (examining plaintiff's claim under Employee Retirement Income Security Act (ERISA) that employer committed unlawful inurement in converting pension fund assets); *see also Spink v. Lockheed Corp.*, 60 F.3d 616 (9th Cir. 1995) (examining plaintiff's claim that employer's retirement plan constituted an unlawful inurement of plan assets under ERISA), rev'd, 517 U.S. 882 (1996). A larger group of cases use the term "anti-inurement" (primarily in the ERISA context). This undermines any argument, however unavailing, that the phrase and associated causes of action should have put Defendants on notice that Plaintiff's UCL claim was based on an alleged violation of federal law.

2, 2022, the Rabobank defendants filed: (i) a demurrer as to the plaintiff's first amended complaint and (ii) a motion to strike one of two classes alleged in the plaintiff's first amended complaint. *Id*. On February 2, 2023, after the demurrer and motion were fully briefed, the state court overruled the demurrer but granted the motion to strike the class with leave to amend because the first amended complaint did not allege facts essential to show that the plaintiff sustained an injury pursuant to Regulation E. *Id*. at *2.  The plaintiff promptly filed a second amended complaint on February 14, 2023, adding additional facts about the plaintiff's injury under Regulation E, and the defendants removed the action on February 23, 2023. *Id*.

After the defendants removed the action, the plaintiff filed a motion to remand, arguing that the notice of removal was untimely because it was unequivocally clear and certain that the case was removable ten months prior to the filing of the second amended complaint, when the plaintiff filed her first amended complaint and explicitly alleged violations of Regulation E in support of her UCL claim. *Id.* at *2.

In evaluating the timeliness of removal, the court found that the plaintiff's allegations of violations of Regulation E in the first amended complaint "quite possibl[y]…triggered the removal clock" and "there was nothing vague or misleading about [the plaintiff's first amended complaint]." *Id*. at *4-5.  However, even though the first amended complaint contained explicit references to Regulation E, the court ultimately determined that the removal clock was subsequently triggered when the plaintiff filed its opposition to the defendants' demurrer to the first amended complaint and an accompanying supporting declaration that cited evidence—previously produced by the defendant—that contained the factual support for the allegations included in the second amended complaint. The court then granted the motion to remand, holding:

> [The plaintiff] demonstrating that [the plaintiff] had been injured under Regulation E, and then in two separate filings [the plaintiff] cited to that same evidence, [the defendant] should have already ascertained that the case was removable before receiving the SAC.

*Id*. at *6.

Defendants argue *Villanueva* is distinguishable because, unlike the plaintiff in that case,

9

here Plaintiff was "hiding the ball" "as it never cited any federal authority in a pleading prior to the SAC." (Doc. No. 18 at 17). While the latter assertion is true—it is undisputed that Plaintiff's August 9, 2023 Opposition to Defendants' demurrer did specifically cite to the Internal Revenue Code and Internal Revenue Code regulations as a basis for its UCL claim. Thus, the Court agrees that Plaintiff's intent to rely on a federal predicate for its UCL claim prior to the date it filed its Opposition was arguably "ambiguous or misleading." *Dietrich*, 14 F.4th at 1095.

Unequivocally, the second pathway provides for removal based upon "other paper" and the *Villanueva* court found an opposition to a demurrer to be an "other paper" for purposes of triggering the removal clock under § 1446(b)(3), *Villanueva*, 2023 WL 4051996 at *7. Defendants cite to *Torres v. Southern California Permanent Medical Group*, which held that because the plaintiff did not set forth the federal basis of their claims for the first time until an opposition to a summary judgment motion, the grounds for removal were not "unequivocally clear and certain" for purposes of triggering the removal clock and would run afoul of the principles set forth in *Dietrich* and *Harris*. 2022 WL 2116339 (C.D. Cal. June 13, 2022).

In *Torres*, plaintiff filed a complaint exclusively asserting state law claims against her employer, including for retaliation, wrongful termination, defamation, and intentional infliction of emotional distress. *Id*. at *1. After defendant filed for removal based on federal preemption under section 301 of the Labor Management Relations Act ("LMRA"), plaintiff filed a motion to remand, arguing that various earlier filings, including an opposition to defendant's motion for summary judgment, put defendant on notice as to grounds for removal. *Id*. at *3-*4.

The district court found that plaintiff's opposition to defendant's motion for summary judgment advanced a legal theory that would provide grounds for removal. However, because plaintiff's opposition was the first-time plaintiff clearly advanced this legal theory before the superior court, the court found it was improper as a basis to trigger the removal clock under § 1446(b). 2022 WL 2116339, at *5. The court noted that "predicating removal on opposition papers presenting a novel theory not part of the pleadings would incentivize defendants to remove early and likely prematurely" contrary to the goals of Dietrich. *Id*. Moreover, "[r]emoval after receipt of an opposition would additionally inappropriately imbalance the roles of the superior

court and district courts." *Id.*

This Court agrees and finds this logic warrants denying the Motion before this Court for similar reasons. Even though Plaintiff's Opposition to Defendants' demurrer arguably made "unequivocally clear and certain" a federal predicate for its UCL claim, it was the first time Plaintiff cited to any federal law in its pleadings. Unlike in *Villanueva*, where plaintiff's counsel had communicated his intent to pursue a cause of action based in federal law and the FAC clearly cited federal law but lacked certain factual allegations, Plaintiff here did not clearly indicate such an intent until its Opposition.

Starting the removal clock before the state court could rule on the demurrer and before Plaintiff could unequivocally assert a federal predicate to its UCL claim in an amended pleading would be counter to the "bright line" principles enunciated in *Harris* and cited in *Dietrich*, including bringing "certainty and predictability to the process" of removals; "avoiding gamesmanship in pleading"; and "avoiding the spect[er] of inevitable collateral litigation over whether the pleadings contained a sufficient 'clue,' whether defendant had subjective knowledge, or whether defendant conducted sufficient inquiry." *Dietrich*, 14 F.4th at 1091. Moreover, such removal would have been premature since the state court had not yet ruled on the potentially dispositive motion. *See Torres v. Chevron U.S.A., Inc.*, 2004 WL 2348274, at *3 (N.D. Cal. Oct. 18, 2004) ("… given that the state court had not yet ruled on Plaintiff's motion for leave to amend the complaint, Defendants' Notice of Removal was premature."). Thus, Plaintiff's Opposition to the demurrer did not trigger the removal clock.

3. <u>Superior Court's August 30, 2023 Order Did Not Trigger Removal Clock</u>

Nor does the Court find that the state court's August 30, 2023 order granting the demurrer to Plaintiff's FAC triggered the removal clock, a theory that Plaintiff does not argue in any depth. The Court agrees with Defendants that Plaintiff's intent to reassert a UCL claim exclusively based on a federal predicate was not "unequivocally clear and certain" after the state court ruled on August 30, 2023; filing a Notice of Removal at this stage would have likely been premature given that Plaintiff's sole reference in the pleadings to federal law was in the Opposition to the demurrer.

As found by the state court, Plaintiff's Complaint and FAC were unclear as to the predicate for the UCL claim.  And because the UCL is a state law cause of action that can be predicated on state or federal violations, grounds for removal could not be "ascertained" with certainty until Plaintiff set forth that predicate in an amended pleading.  "When a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996); *see also Kripke v. Safeway, Inc.*, 2018 WL 3491903, at *7 (N.D. Cal. July 20, 2018) (granting motion to remand because plaintiff's UCL claims were not exclusively based on federal predicate violations).  Because it was not "unequivocally clear and certain" from Plaintiff's pleadings and communications throughout the case that they would only cite federal predicates for their UCL claim—a state law cause of action—Defendants were not yet on notice as to grounds for removal and thus the state court's August 30, 2023 order did not trigger the removal clock.

Grounds for removal were not "unequivocally clear and certain" until Plaintiff filed the SAC on September 8, 2023, stating in pertinent part that:

> Defendants unfairly and unlawfully pursued a plan to compel CCGOS, UNI, UPS, and USSA to breach their PSAs with Plaintiff CFMG so that Defendants could contract with the medical specialty groups for non-profit and for-profit purposes. Because Defendants are non-profit entities, they committed an unlawful inurement to benefit a related private entity, the Osteopathic School, in violation of Internal Revenue Code Section 501(c)(3) and Internal Revenue Code Regulation 1.501(c)(3)-1(c)(2).  Both sections prohibit a non-profit entity from using its net income, either in whole or in part, to inure to the benefit of any private shareholder or individual.

(Doc. No. 1-7 at 5 ¶ 11).  Defendants' October 6, 2023 Notice of Removal, filed 28 days after service of the SAC containing this "unequivocally clear and certain" assertion under federal law, was thus timely.

## CONCLUSION

As set forth above, the Court finds that Defendants' Notice of Removal (Doc. No. 1) was timely and that federal question jurisdiction exists under 28 U.S.C. § 1331 because the Second

Amended Complaint asserts a claim under California Business & Professions Code § 17200 based exclusively on violations of federal tax law, namely Internal Revenue Code § 501(c)(3) and Internal Revenue Code regulations 1.501(c)(3)-1(c)(2).

Accordingly, it is hereby **ORDERED**:

1. Plaintiff's Motion to Remand (Doc. No. 15) is DENIED.
2. The Court schedules this case for a mandatory telephonic initial scheduling conference (Dial-In: 888-204-5984; Passcode: 4446176) for Thursday, **February 15, 2024 at 1:00 P.M.**
3. The Parties may file an amended joint report, if necessary, no later than February 8, 2024.

Dated:    January 24, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE